07-06-04   10:17   From-EDS Legal Affairs     972 605 0791



# COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH COUNTY

SUPERIOR COURT
DEPARTMENT CIVIL
ACTION NO. 04-772 B

Debra Magnuson
Petitioner/Plaintiff

COMPLAINT AND
DEMAND FOR TRIAL

v.

Electronic Data Systems (EDS)
Respondent/Defendant

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

JUN 17 2004

CLERK

And

Michael Curry, Claims Manager
Electronic Data Systems (EDS)
Respondent/Defendant

And

Martha R. Hastings, Claims Manager
Electronic Data Systems (EDS)

## COMPLAINT

This is an action to recover damages for wrongful termination of employment and possible violation of Massachusetts General Law, Chapter 151B. Plaintiff shows the Court the following:

1

## PARTIES

1. Plaintiff, Debra Magnuson, is an adult resident of Hanover, Plymouth County, Massachusetts.

2. Defendant, Electronic Data Systems (EDS), is a corporation located at 5400 Legacy Drive, Plano, Texas.

3. Defendant, Michael Curry, is a Claims Manager employed by National Heritage Insurance Company, a wholly owned subsidiary of Electronic Data Systems (EDS), located at 75 Sgt. Wm. Terry Dr., Hingham, Massachusetts.

4. Defendant, Martha R. Hastings, is a Claims Manager employed by National Heritage Insurance Company, a wholly owned subsidiary of Electronic Data Systems (EDS), located at 75 Sgt. Wm. Terry Dr., Hingham, Massachusetts.

## FACTS

5. Plaintiff was employed by Defendant, Electronic Data Systems (EDS), until June 20, 2003, when she was terminated. The reason given for termination was violation of company Code of Conduct (Business and Ethics Policy), specifically, violation of the Substance Abuse Policy (alcohol). The reason was false.

6. Defendant contends that she did not violate such policy (policy attached) and maintains that termination was due to ongoing disputes with her Manager, Michael Curry, regarding Plaintiff's job description and job responsibilities.

7. Plaintiff also cites inconsistency is practiced by EDS when enforcing this policy.

8. Plaintiff has knowledge of the fact that in August 1997, when employees of Blue Cross, Blue Shield of Massachusetts were transitioning to EDS, it was required by EDS that all transitioning employees submit to a hair test to determine potential drug use. Plaintiff's then manager, Martha R. Hastings, authorized waiver of this test for a period of (3) three months for an employee reporting to one of her direct reports.

9. On June 9th, 2003, officers for the Defendant sent Plaintiff on a business trip to Defendant's Chico, California site to participate in training on a new software system. On Thursday, June 12th, 2003, at the end of the last working day of the trip, Plaintiff was taken to lunch at the Sierra Nevada Brewery, Chico, California. Two supervisors and at least five other employees (including Plaintiff) were present

2

during this off-site luncheon. The Plaintiff ate bread, pizza, and consumed less than one glass of beer (12 oz.) during this luncheon. The Plaintiff was in no way impaired or intoxicated by consuming less than one full glass of beer with her meal. Those present can attest to Plaintiff's behavior and conduct during this time.

10. Defendant's policy clearly states that returning to work under the influence of alcohol is prohibited. Plaintiff was not returning to the site to work and was not under the influence of alcohol.

11. Plaintiff is in possession of personal notes she maintained over a period of approximately (3) three months (February 2003 through April 2003) that document ongoing disputes with her Manager, Michael Curry. Plaintiff contends that this written documentation shows Defendant's (Michael Curry) harassment of Plaintiff and Defendant's (Michael Curry) attempt to force Plaintiff out of her position.

12. Defendant (Michael Curry) internally posted Plaintiff's job (April 3, 2003) while she was still employed in that position. When Plaintiff questioned this action, Defendant (Michael Curry) informed her that the position was posted in an attempt to hire an assistant for Plaintiff, however the posted position was a higher job code (both financially and in terms of responsibility) than Plaintiff's then current job code. Plaintiff requested a meeting (in writing) to clarify her job code and the action taken by Defendant.

13. Plaintiff was informed by Defendant, Michael Curry, on April 22, 2003, that she would have to "earn" that job code and "prove" herself in that position before a change would be made to her job code. Plaintiff was hired into that position in December 2002 and kept in her previous, lower job code because she was told that a code did not exist for her new position. Plaintiff had been performing the job duties required of the higher position for approximately (4) four months.

14. During Plaintiff's annual performance review (late April/early May 2003) with Defendant Michael Curry's superior, (Andrew J. Conn, Director of Claims Operations), Plaintiff told Mr. Conn of the discrepancy in her job code. Mr. Conn responded that the Plaintiff should be in the higher job code, however, this dispute was still unresolved at the time of Plaintiff's termination.

15. Upon return to work in Hingham, Massachusetts, on June 16, 2003, Plaintiff was called into Defendant Michael Curry's office to review her trip to Chico and was asked if she still wanted to be placed in the higher job code. Plaintiff's response was yes.

16. Plaintiff was called into the office of Martha R. Hastings on June 20, 2003 and in the presence of Ms. Hastings and Mr. Curry, was terminated. When the Plaintiff was asked to sign separation papers stating she violated the company Code of Conduct, she refused.

Plaintiff seeks monetary damages in the amount of $750,000.00 for non-payment of wages (vacation pay), loss of income, loss of medical and dental insurance, termination from participation in company 401K plan, default on a loan from 401K plan, tuition fees paid for further education, medical bills due to lack of insurance, and unimaginable pain, stress, and suffering due to the fact that Plaintiff was the major source of income as well as the insurance carrier for her family.

Debra A. Magnuson
640 King St.
Hanover, MA 02339
Ph. 781-871-2218 (home)

*Debra A. Magnuson, 6/17/04*

4

07-06-04   10:18   From-EDS Legal Affairs   972 605 0791   T-760   P.012/026   F-287

infoCentre   about this site   map   comments   privacy   Request / update content   Quick Links
who is EDS?   our marketplace   sales   people support   workplace support   news   library
intranet   keyword   people   [find]   advanced search   keyword index

## 2003 Code of Business Conduct

Introduction
Our Clients
Our Employees
Our Company
Government and Politics
Transnational Conduct
Compliance/Discipline
Addendum
Certification
Contacts

To:
Ethics and Business Conduct

### Compliance / Discipline

The EDS Code of Business Conduct provides a broad range of information and guidance about the standards of integrity and business conduct that we are expected to follow. It does not address each situation or set forth each rule or policy, and it is not a substitute for our responsibility and accountability to exercise good judgment and obtain guidance when required. At any time, seek additional guidance and support from your EDS leader, or any EDS leader or the Office of Ethics and Business Conduct.

Any form of reprisal for raising issues in good faith regarding violations of our standards will not be tolerated.

Failure to comply with the EDS Code of Business Conduct may result in disciplinary actions including verbal reprimand, written reprimand or termination of employment.

Disciplinary action will be considered in all appropriate circumstances, including but not limited to circumstances involving any employee who:

- Is found to have authorized, condoned, participated in or concealed actions that are in violation of these standards;
- Provides the approval for or disregard of a violation, or who through lack of diligence in supervision fails to prevent or report violations;
- Retaliates directly or indirectly or encourages others to retaliate against an employee who reports a violation of these standards; or
- Is found to be uncooperative or untruthful during an internal investigation into any violation or potential violation of the EDS Code of Business Conduct or any EDS policy.

The EDS Code of Business Conduct is not intended to confer any special rights or privileges upon specific individuals, provide greater or lesser rights under applicable law or entitle any person to remain employed by EDS. Unless contrary to applicable law or the terms of a written contract executed by an officer of EDS, employment at EDS is for no definite period and may be terminated at any time by the company or by an employee with or without cause and with or without any previous notice (unless specifically provided otherwise in a written contract executed by an officer of EDS). Although some of the guidelines set forth herein may suggest, even strongly, that certain procedures or steps be followed, these procedures should not be interpreted as altering the at-will employment relationship and do not constitute an employment contract.

The EDS Code of Business Conduct is not a contract, and EDS retains the right to change, modify, suspend, interpret or eliminate any provision in this plan,

01-06-04    10:19    From-EDS Legal Affairs    972 605 0791    T-760    P.013/026    F-287

infoCentre  about this site  map  comments  privacy  |Request / update content    Quick Links
who is EDS?  our marketplace  sales  people support  workplace support  news  library
intranet  keyword  people  [find]  advanced search  keyword index

## 2003 Code of Business Conduct

Introduction
Our Clients
Our Employees
　Communicating Openly
　Respecting Privacy
　Treatment of Employees
　Sexual Harassment and Other Unlawful Behavior
　Obligations Relating to Prior Employment
　Maintaining a Healthy Work Environment
　Maintaining a Safe Workplace
　Drugs and Alcohol
Our Company
Government and Politics
Transnational Conduct
Compliance/Discipline
Addendum

Certification
Contacts

To.
Ethics and Business Conduct

### Drugs and Alcohol

EDS is committed to maintaining a drug-free workplace and prohibits the possession, sale, distribution, manufacture, use, transportation or purchase of any illegal drug or unauthorized controlled substances. Illegal drugs include marijuana, cocaine, heroin, amphetamines, barbiturates and other unauthorized controlled substances. It also violates EDS policy to use, obtain and/or be under the influence of any prescription drug while working other than as medically prescribed. To protect each other and ourselves, we should understand that certain mood-altering chemicals of any kind may impair our ability and may contribute to a variety of work-related problems.

Any employee who has information regarding the possession, sale or use of illegal drugs or unauthorized controlled substances on EDS or client premises should contact his or her EDS leader, EDS Security or the Office of Ethics and Business Conduct.

Being under the influence of alcohol while working is prohibited. However, consuming alcohol during work hours or after-hours at an EDS-sponsored or client-sponsored event, regardless of location, is permissible provided the event has senior leadership approval and proper business decorum is maintained. For more comprehensive and regional details regarding the use and possession of alcohol on EDS or client premises, please contact your EDS Leadership and Change Management or Employee Relations office.

For more information on this topic. see the Substance Abuse Policy.

Continue →

07-06-04    10:19    From-EDS Legal Affairs    972 605 0791    T-760    P.014/026    F-287

infoCentre  about this site  map  comments  privacy  iRequest / update content     Quick Links ...
who is EDS?  our marketplace  sales       people support    workplace support    news    library
( intranet  ( keyword  ( people  [_____] find    advanced search    keyword index

## Substance Abuse Policy

Last Updated 08 May 2003

To:
Corporate Policies

Effective: 17 March 2000

### Purpose

*To establish guidelines for maintaining a drug-free workplace*

### Background

EDS is committed to maintaining a drug-free workplace and is completely opposed to the use, possession, sale, manufacture, distribution, delivery, transportation, and/or purchase of illegal drugs by any employee. Illegal drugs include marijuana, cocaine, amphetamines, barbiturates, heroin, and other unauthorized controlled substances. It also violates EDS policy to use, obtain, and/or be under the influence of any prescription while working, other than as medically prescribed.

EDS discourages its employees from abusing alcohol. EDS believes that abusing certain mood-altering chemicals may impair the ability of employees and may contribute to a variety of work-related problems. Therefore, being under the influence of alcohol while working is prohibited

### Scope

This policy applies to all officers, employees, visitors, suppliers, contract labor, and any agents and representatives of EDS while acting on behalf of EDS or any of its directly or indirectly majority-owned or controlled subsidiaries.



### Policy

**Drugs and/or Controlled Substances**

The following activities involving illegal drugs or unauthorized controlled substances are expressly prohibited:

- Use
- Possession
- Sale
- Manufacture
- Distribution
- Delivery
- Transportation

- Purchase

**Enforcement/Testing**

- All new EDS employees must pass a pre-employment drug screening. This test must be taken within 24 hours of any offer of employment. The offer of employment is contingent upon passing the drug screening. An applicant whose test results indicate the presence of illegal drugs will be ineligible for EDS employment and will have his/her offer of employment withdrawn.
- Employees in certain positions within EDS will be periodically tested for the presence of illegal drugs, including, but not limited to, those holding jobs for which testing is required by any government agency or regulation, all safety-related jobs, and all line of business presidents and equal/higher-level EDS executives.
- With the approval of a line of business president or equal/higher-level EDS executive, any employee may be tested for the presence of illegal drugs at any time when there is reasonable suspicion that the employee may be in violation of the company's Substance Abuse Policy.



**Alcohol**

The following activities involving the use of alcohol are expressly prohibited:

- Consuming alcohol during work hours or after-hours at an EDS-sponsored or client-sponsored event, regardless of location, without <u>senior leadership</u> approval.
- Returning to work while under the influence of alcohol (for example, on call situations)
- Serving alcohol at an EDS-sponsored function to any employee or guest under the legal drinking age
- Operating an EDS motor vehicle or any motor vehicle on EDS premises while intoxicated

**Tasks and Responsibilities**

**Leaders and Employees**

- Understand and comply with this policy

Avenues to seek advice and guidance or to report any violations/suspected violations of this policy are:

- EDS leader
- EDS Security
- EDS Office of Ethics and Business Conduct
- EDS Employee Relations
- EDS Leadership and Change Management Business Partner

**Consequences of Violation**

Violation of this policy may include disciplinary action up to and including termination of employment.

The employee may be referred to the EDS Employee Assistance Program (EAP) for mandated assessment, treatment, and/or counseling for:

- The use of illegal drugs while away from work
- The use of alcohol or unauthorized use of prescription drugs that negatively affects job performance and violates company policy
- Testing positive for illegal drugs
- Any involvement with mood-altering chemicals that generates adverse publicity or circumstances affecting the company, its employees, its clients, or its potential clients

Contact
Sylvia Burrow

http://infocentre.eds.com/people/corp_policies/pe_corp_policies_substance.html                6/20/2003

07-06-04    10:20    From-EDS Legal Affairs          972 605 0791          T-760  P.017/026  F-287

July 2, 2003

Debra Magnuson
640 King Street
Hanover, Massachusetts 02339

Andrew Conn, Director of Claims Operations
National Heritage Insurance Company
75 Sgt. William Terry Drive
Hingham, Massachusetts 02043

Dear Mr. Conn,

I am writing this letter as an appeal to your decision to terminate my employment after nearly 13 years of service to this company. Since this incident, I have been extremely distraught and upset. Primarily, I am concerned with my ability now to provide for my family and to obtain appropriate health insurance at an affordable price to adequately meet their needs. As you know, I have two young daughters.

I believe this discharge to be unfair, and I would like to exercise this internal grievance procedure before going to an outside party. First of all, I had no reason to believe that my actions would put my position in jeopardy. There was nothing in any policy or past practice that would serve as a reasonable warning to me. As I was at lunch, in a very different setting from our workplace in Massachusetts and on my own time, as defined by the Fair Labor Standards Act, I saw no problem in tasting a beverage to a small degree that I did. I was in no way affected or impaired by consuming a partial glass of beer while lunching with colleagues at this local brewery/restaurant. I was mindful of using a breath mint and chewing gum to avoid any odor of this minimal consumption of alcohol upon return to the Chico site to finish up, collect my things, and prepare for the return trip to Sacramento that afternoon. I am certain that those people who were with me would attest to the appropriateness of my behavior.

As a mature woman and mother who is over 40 years of age, I can assure you that I would not put my livelihood or reputation in jeopardy. My personnel record with this company will indicate that I have had no previous issues or warnings of this nature. I have been a good performer for 13 years, and in fact received praise for a job well done by my manager, Michael Curry, on the Monday prior to hearing this news. At that time, Mr. Curry agreed to amend my job code to the appropriate level, something you and I briefly discussed during my favorable performance review on April 7, 2003. This positive feedback came after my trip to California to attend this training/testing session.

I feel strongly that I have been subject to a wrongful discharge that

will adversely affect my future ability to provide for my family and quickly find other employment. I still am not in receipt of the final payment of vacation time owed to me, which I believe should have been given to me immediately.

I would like to discuss the above issues with you and would expect to hear from you no later than July 15, 2003.

Regards,

*Debra Magnuson*

Debra Magnuson

cc: file copy

**CMS**
Centers for Medicare & Medicaid Services

**MEDICARE**
PART B CARRIER
Phone: (781) 741-3029
www.medicarenhic.com

July 9, 2003

Ms. Debra Magnuson
640 King Street
Hanover, Massachusetts 02339

Dear Debra:

This is in response to your letter of July 2, 2003, regarding your separation from EDS. As you are aware, you were separated for violating EDS' Code of Business Conduct when you admittedly consumed an alcoholic beverage at lunch and then returned to the workplace. In your letter, you assert there was "nothing in any policy or past practice that would serve as a reasonable warning" to you regarding this matter. However, on April 4, 2003, you certified you had reviewed the EDS Code of Business Conduct, which specifically states being under the influence of alcohol while working is prohibited.

While we are sympathetic to your personal concerns, you were separated from EDS for valid business reasons, and the decision stands.

With regard to your unused vacation, EDS vacation guidelines clearly state that employees will not be reimbursed for unused vacation at the time of separation unless required by state law. At the present time, Massachusetts is not a state in which EDS pays for unused vacation.

On behalf of EDS, I wish you well in your future endeavors.

Sincerely,

Andrew J. Conn
Director of Claims Operations

cc: Michael Curry

**NHIC**
National Heritage Insurance Company
75 Sgt. William B. Terry Drive
Hingham, Massachusetts 02043
A CMS CONTRACTED CARRIER

07-06-04  10:21  From-EDS Legal Affairs          972 605 0791      T-760  P.020/026  F-287

EDS PRIVATE

# EDS SEPARATION FORM

**EMPLOYEE INFORMATION**

NAME: Magnuson Debra
(Last) (First) (Middle Initial)

SSN: 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

FORWARDING INFO: 640 King Street
(Street Address)

Hanover      MA      02339
(City)       (State)  (Zip Code)

**ACOUNT INFORMATION**

ACCT NAME: UHIC

ACCT CITY: Hingham

DIV/ADMIN NUMBER: _____

(Telephone No.)

EMPLOYEE: REASON FOR SEPARATION AND COMMENTS
Violation of code of Business Conduct

NEW EMPLOYER _____           DATE _____

EMPLOYEE'S SIGNATURE _____
EE would not sign JC

☐ BI-WEEKLY           ☒ COMPANY INITIATED
☐ SEMI-MONTHLY       ☐ EMPLOYEE INITIATED

SEPARATION CODES

| 105 | | |
|---|---|---|
| PRIMARY | SECOND | THIRD |

(See reasons on back. Select SECOND and THIRD codes if applicable)

JOB CODE: 33930
JOB TITLE: Insurance Analyst
DATE EMPLOYED: 11/19/90
LAST DAY WORKED: 6/20/03
DATE PAID THROUGH: 6/20/03
SEPARATION EFFECTIVE DATE: 6/20/03

ELIGIBLE FOR REHIRE (Explain below if applicable)   ☐ YES  ☒ NO

MANAGER: REASON FOR SEPARATION AND COMMENTS: Violation of Code of Business Conduct

**ACTION REQUIRED BY MANAGER**

| COLLECT | VERIFY STATUS | CANCEL | REMINDER |
|---|---|---|---|
| Advances ☐Y☐N☐NA | Promissory Note ☐Y☐N☐NA | Authorized Signatory ☐Y☐N☐NA | Deductions ☐Y☐N☐NA |
| Building Pass/Decal ☐Y☐N☐NA | Relocation Expense ☐Y☐N☐NA | Long distance Access Code ☐Y☐N☐NA | Employee Agreement ☐Y☐N☐NA |
| Credit Cards ☐Y☐N☐NA | D O D Debriefing ☐Y☐N☐NA | Network User ID and Password ☐Y☐N☐NA | Employee Records ☐Y☐N☐NA |
| Health Benefit Card ☐Y☐N☐NA | (Federal Government Contracts) | | Health Continuation Coverage ☐Y☐N☐NA |
| Keys ☐Y☐N☐NA | | | Repayment Agreement ☐Y☐N☐NA |

MANAGER'S NAME: Michael Curry
MANAGER'S SIGNATURE: _____
ALTERNATIVE MANAGER OR SUPERVISOR CONTACT _____

MANAGER'S SSN: 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
DATE: 6/20/03

*REFER TO PROCEDURES MANUAL 800 FOR INSTRUCTIONS

599-120 (06-87)

07-06-04   10:22   From-EDS Legal Affairs         972 605 0791         T-760   P.021/026   F-287

0330540036601-01
STERLING BANK

SLM FINANCIAL CORPORATION
PO BOX 470
MARLTON, NEW JERSEY
08053

DEBRA A MAGNUSON
7 KING STREET
HANOVER, MA 02339

Dear DEBRA A MAGNUSON

Re: DEBRA A MAGNUSON
CLARK UNIV COMPUTER CAREER IN/BRAIN

Loan Amount: $14,189.00

Thank you for your recent loan application. We regret that we are unable to approve your request. Pursuant to Regulation B 202.9 (a), you are advised that our decision to deny your application for credit was based upon the following specific reason(s):

\_\_\_\_ 1. Credit application incomplete
\_\_\_\_ 2. Insufficient credit references
\_\_\_\_ 3. Temporary or irregular employment
\_\_\_\_ 4. Unable to verify income
\_\_\_\_ 5. Insufficient income – does not meet our credit requirements
\_\_\_\_ 6. Your current Co-borrower did not qualify

\_\_\_\_ 7. No credit file
\_\_\_\_ 8. Delinquent credit obligations
\_\_\_\_ 9. Previous delinquent obligations
\_\_\_\_ 10. Loan Over 30 Days
\_\_\_\_ 11. Garnishment, attachment, bankruptcy or foreclosure
\_\_\_\_ 12. Cancelled by Applicant

If you would like to proceed with your request, you have the following options:

[X] Denied for the requested amount but would be approved for a maximum amount of $ 7,500 by yourself or the applicant can re-submit within 20 days with a Co-Borrower for the full amount.

[ ] Denied with the opportunity to re-submit within 20 days with a Co-Borrower

[ ] Denied with _____ as a Co-Borrower, but can re-submit within 20 days with another Co-Borrower.

[ ] Denied with _____ as a Co-Borrower for the requested amount, but would be approved for a maximum amount of $ _____ with the current Co-Borrower or the applicant can resubmit within 20 days with a new Co-Borrower for the full amount.

If there is no activity within 20 days of this notice, we will consider your request closed.

If items 2,7,8,9 and/or 11 are checked above, our decision was based on the information obtained from the consumer reporting agency checked below. This agency played no part in our decision other than providing us with credit information about you. Under the Federal Fair Credit Reporting Act, you have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. You have a right to dispute the accuracy or completeness of any information in the consumer report with the consumer reporting agency. You can contact the agency by using the following information:

[ ] Experian National Consumer Assistance Center – PO Box 949, Allen, TX 75023-0949         1-888-397-3742

[X] Trans Union -2 Baldwin Place, P.O. Box 1000, Chester, PA 19022         1-800-916-8800

[ ] Equifax Credit Information Services – 1150 Lake Hearn Drive Suite 460, Atlanta, GA 30374-0241         1-800-685-1111

Should you have any additional information which might assist us in evaluating your creditworthiness, please let us know. We thank you for applying and we sincerely hope that SLM Financial may be able to serve you in the future.

EQUAL CREDIT OPPORTUNITY ACT NOTICE

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the consumer credit protection act.

The federal agency that administers compliance with this law concerning this creditor is the:
Federal Reserve Bank
10 Independence Mall
Philadelphia, PA 19106-1574

Notice mailed on:   08-22-2003                   By: SLM Financial Corporation
                                                     1-888-2SALLIE

07-06-04   10:22   From-EDS Legal Affairs        972 605 0781        T-760   P.022/026   F-287

## Quest Diagnostics

**Laboratory Invoice**

For services not included in your physician's bill.

Invoice Number: P404786B5
Lab Code: CAM

4516WHIT CAM 404786B5
DEBRA MAGNUSON
840 KING ST
HANOVER, MA 02339-2416

1166

**MEMO:** METROPOLITAN NOIN BLUE CROSS DID NOT PROCESS YOUR CLAIM BECAUSE YOUR CONTRACT HAS BEEN CANCELLED. THIS BALANCE IS YOUR RESPONSIBILITY. YOUR PROMPT PAYMENT IS APPRECIATED. THANK YOU.

| LABORATORY SERVICE | CPT CODE / DATE RECEIVED | AMOUNT |
|---|---|---|
| ANTI HEPATITIS B SURFACE ANTIG | 86706 | $42.75 |
| HEPATITIS A ANTIBODY, TOTAL RF | 86708 | $55.75 |
| HEPATITIS B SURFACE ANTIGEN | 87340 | $42.75 |
| HEPATITIS C ANTIBODY | 86803 | $75.25 *Please deduct* |
| RUBELLA HI | 86762 | $37.00 |
| MUMPS (COMPLEMENT FIXATION) | 86735 | $83.25 |
| MEASLES[RUBEOLA]ANTIBODIES | 86765 | $85.50 |
| ANTI HEPATITIS B CORE | 86704 | $62.50 |
| RESP. PARTY PAYMENT | 01/20/04 | $50.00 - |

Patient Name: DEBRA MAGNUSON
Date of Service: November 18, 2003
Amount Due: $434.75   03/18/2004
Payment Due Date:
Responsible Party: DEBRA MAGNUSON
Requested by: JANET A WHITLEY NP (4516)
Invoice Date: February 25, 2004

*434.75  3-5-04*

Services Performed by: Quest Diagnostics Incorporated Cambridge, MA
ICD-9 Codes: V70.0
Tax ID # 04-3246020

▼ Please fold and tear payment coupon along perforation and remit with payment in the envelope provided. ▼

If you have Medicare, Railroad Medicare or Medicaid as your primary or secondary insurance, please send us the information - see reverse side.

The CPT codes provided are issued on AMA guidelines and without regard to specific payor requirements.

07-06-04  10:23  From-EDS Legal Affairs  972 605 0791  T-760  P.023/026  F-287

# Quest Diagnostics

**Laboratory Invoice**

For services not included in your physician's bill.

Invoice Number: P40549355
Lab Code: CAM

4516CARP CAM 40549355
DEBRA MAGNUSON
640 KING ST
HANOVER, MA 02339-2416

1167

LABORATORY SERVICE
THIN PREP SCREEN

| CPT CODE / DATE RECEIVED | AMOUNT |
|---|---|
| 88142 | $66.25 |

Pd'd 3.5.04

ALTHOUGH OUR RECORDS INDICATE THAT BLUE CROSS DID NOT PROCESS YOUR CLAIM BECAUSE YOUR CONTRACT HAS BEEN CANCELLED, THIS BALANCE IS YOUR RESPONSIBILITY. YOUR PROMPT PAYMENT IS APPRECIATED. THANK YOU.

Patient Name: DEBRA MAGNUSON
Date of Service: November 19, 2003
Amount Due: $66.25
Payment Due Date: 03/18/2004
Responsible Party: DEBRA MAGNUSON
Requested by: JOHN CARPENTER MD (4516)
Invoice Date: February 25, 2004

If you have Medicare, Medicaid or Medicare as your primary or secondary insurance, please note on the information on reverse side.

The CPT codes provided are based on AMA guidelines and without regard to specific payer requirements.

Services Performed by: Quest Diagnostics Incorporated Cambridge, MA
ICD-9 Codes: V72.3
Tax ID # 04-1248020

▼ Please fold and tear payment coupon along perforation and remit with payment in the envelope provided ▼

07-06-04  10:23  From-EDS Legal Affairs  972 605 0791  T-760  P.024/026  F-287

**NORTH RIVER MEDICAL ASSOC., INC**
214 MARKET STREET
ROCKLAND, MA 02370
TEL: 781-902-0316

Account Number: 82
Patient: DEBRA MAGNUSON

| Service Date | Procedure Code | Patient Name | Description | Patient | Insurance |
|---|---|---|---|---|---|
| 12/15/03 | 99394 | DEBRA MAGNUSON | Balance | | |
| 01/07/04 | 90471 | DEBRA | GYN EXAM REG | | |
| 01/07/04 | 90471 | DEBRA | ADMINISTRATION | | |
| | 15 | | TETANUS TOXOID INJ | | |
| | | | CHECK - THANK YOU | | |
| | | | ***TOTAL FOR VISIT*** | | |
| 11/24/03 | 90772 | DEBRA | RJC ADMINISTRATION | | |
| | 90746 | | HEPATITIS B VACCINE | | |
| | | | ***TOTAL FOR VISIT*** | | |

Current: 0.00  Over 30 Days  Over 60 Days  Over 90 Days  Over 120 Days

**BALANCE DUE**

**PATIENT IS RESPONSIBLE FOR "BALANCE DUE" SHOWN**

pd $25.00
2/25/04



# EDS 401(k) Plan
# Confirmation of Loan Foreclosure

Statement Date 12-31-2003
Status at Payment: Term

000002
DEBRA MAGNUSON
640 KING STREET
HANOVER MA   02339

This statement confirms that your EDS 401(k) Plan loan was in default and has resulted in foreclosure on the loan, effective December 31, 2003. The amount of the loan foreclosure is $6,217.45, which represents your outstanding principal balance plus any applicable interest. Your account balance has been reduced by the amount of your outstanding principal balance.

## Tax Information

**Federal Taxable Amount**
Your federal taxable income for your 2003 tax return is as follows:

| | |
|---|---|
| Gross Distribution | $6,217.45 |
| Less Nontaxable Credit | 0.00 |
| Reported Federal Taxable Income | $6,217.45 |

This foreclosure may be subject to an additional 10% penalty tax on early distributions. Please consult your attorney or a tax advisor for more information.

**State Taxable Amount**
Your state taxable income for your 2003 tax return is as follows:

| | |
|---|---|
| MA Taxable Income | $6,217.45 |

Please retain this statement for your tax records. In January 2004, you will receive a Form 1099-R, which will be filed with the federal and, if applicable, state government for this loan foreclosure.

Powered by Hewitt

0185430082  E3168-000002



07-06-04   10:24   From-EDS Legal Affairs         972 605 0791        T-760  P.026/026  F-287

**From:** "Magnuson, Debra" <debra.magnuson@eds.com>  ⊕ Add to Address Book
**To:** "damcat2@yahoo.com" <damcat2@yahoo.com>
**Subject:** 📄 FW: Action Requested- Training Specialist posting template
**Date:** Tue, 27 May 2003 09:11:00 -0400

FYI. Keep for personal records.

> -----Original Message-----
> From:        Taylor, Evelyn
> Sent: Thursday, April 03, 2003 3:11 PM
> To:   Magnuson, Debra; Stokinger, Maggie; Gillis, Suzanne M; Hassam, Lisa; Johnston, Deborah; Levangie, Corinne; Rennie, Donna M
> Cc:   Curry, Michael
> Subject:     FW: Action Requested- Training Specialist posting template
>
> Hi everyone,
>
> fyi - posting.....some help for Deb......Evelyn
>
> -----Original Message-----
> From:        Murphy, Colleen K
> Sent: Thursday, April 03, 2003 7:27 AM
> To:   Andrea Maguire; Barbara Harnden; Colleen Cerullo; Donna Collins; Gail O'Leary; Jennifer Smith; Lynn Gillespie; Maura Bickford; Sarah Nonenmacher
> Cc:   Evelyn Taylor; Karen Littlefield; Mary Scott; Patricia Gardiner; Roslyn Thaice
> Subject:     Action Requested- Training Specialist posting template
>
> Please post in your areas.
>
>
> <<Training Specialist.doc>>
>
> Colleen K Murphy
> NHIC New England
> Claims Operations
> 75 William Terry Drive
> Hingham, MA 02043
>
> * phone: 781.741.3157
> * mailto:colleen.murphy@eds.com
>
>
>

Attached:


Training_Specialist.doc

Scan and Download Attachment

Scan and Save to my Yahoo! Briefcase

http://us.f517.mail.yahoo.com/ym/ShowLetter?MsgId=4098_1333793_6734_1738_10373...    6/17/2004

JUN-03-2004 13:41 From: